UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-20533-BLOOM/Louis

FRANCISCO J. DE POMBO,
and all others similarly situated
under 29 U.S.C. § 216(b),

 Plaintiff,

v.

IRINOX NORTH AMERICA, INC.
and JOHN HORVATH, individually,

 Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendants IRINOX North America, Inc.'s and John Horvath's (collectively, "Defendants") Motion to Compel Arbitration/Dismiss and for Attorneys' Fees, ECF No. [7] ("Motion"). Plaintiff Francisco De Pombo ("Plaintiff") filed a Response in Opposition, ECF No. [16] ("Response"), to which Defendants file a Reply, ECF No. [22] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part.

### I. BACKGROUND

On February 5, 2020, Plaintiff initiated the instant action against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), asserting a single count for the nonpayment of overtime wages while Plaintiff was employed by Defendants. ECF No. [1]. Defendants filed the instant Motion and seek to have the Court compel arbitration and dismiss the case because Plaintiff entered into an "Employee Separation and Release Agreement," ECF No.

[7-1] ("Agreement"), which states: "Should a dispute arise concerning this Agreement or its performance, such dispute shall be resolved at the election of the party seeking to enforce the Agreement . . . by binding arbitration administered by the American Arbitration Association [("AAA")] under its commercial dispute resolution rules." *Id.* at 4, ¶ 12.2 ("Arbitration Clause"). In moving to enforce the Arbitration Clause, Defendants argue that a valid, written agreement to arbitrate exists between the parties, the parties agreed that issues regarding arbitrability would be resolved by the arbitrator, Defendants have not waived the right to submit this action to arbitration, and, although an issue properly left to the arbitrator, Defendants should be awarded attorneys' fees. ECF No. [7]. On April 2, 2020, Plaintiff filed his Response, which opposed arbitration, challenged the validity of the arbitration agreement, and argued that forcing Plaintiff to submit his FLSA claim to arbitration is contrary to the purpose of the FLSA. ECF No. [16]. Defendants reply that each of the issues Plaintiff presents must be decided by the arbitrator pursuant to the parties' Agreement.

## II. LEGAL STANDARD

The presence of a valid arbitration provision raises a strong presumption in favor of enforcement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630-31 (1985) (stressing that the enforcement of a mutually agreed upon arbitration or forum-selection clause serves as an "indispensable precondition to the achievement of the orderliness and predictability essential to any international business transaction"). Indeed, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "embodies a 'liberal federal policy favoring arbitration agreements.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1357-58 (11th Cir. 2002) (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 625-26), *abrogated on*

*other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*, 134 S. Ct. 773 (2014); *see also Hemispherx Biopharma, Inc.*, 553 F.3d at 1366 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Despite courts' proclivity for enforcement, a party will not be required to arbitrate where it has not agreed to do so. *See Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010), *aff'd*, 433 F. App'x 842 (11th Cir. 2011) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). "Under federal law, arbitration is a matter of consent, not coercion." *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008). It is axiomatic that the determination of whether parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Generally, this determination requires the district court to apply standard principles of state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939 (1995); *see also P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003).

"By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.*, 470 U.S. at 213. Thus, if the criteria above are satisfied, a court is required to issue an order compelling arbitration. *See John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, . . . a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute.").

### III. DISCUSSION

Defendants move to compel arbitration and dismiss this case because the parties entered into a valid and enforceable agreement requiring that disputes be submitted to binding arbitration. Plaintiff challenges the validity of the arbitration agreement due to the fact that neither Defendant IRINOX North America, Inc. nor a witness signed the Agreement and the effective date varies from Plaintiff's signature date. Moreover, Plaintiff argues that forcing him to submit his claim to arbitration is contrary to the purpose of the FLSA. Defendants maintain that the arguments raised by Plaintiff present issues that are to be determined by the arbitrator pursuant to the terms of the parties' Agreement.

The FAA reflects "a liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Section 2 of the FAA states:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2; *see also Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) ("Arbitration provisions will be upheld as valid unless defeated by fraud, duress, unconscionability, or another 'generally applicable contract defense.'" (citation omitted)).

Section 3 of the FAA further states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. "Claims are subject to arbitration where they fall within the scope of a valid and enforceable arbitration agreement." *Citi Cars, Inc. v. Cox Enters., Inc.*, No. 17-cv-22190, 2018 WL 1521770, at *4 (S.D. Fla. Jan. 22, 2018) (citing *Benoay v. Prudential-Bache Sec., Inc.*, 805 F.2d 1437, 1440 (11th Cir. 1986)).

"Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) [whether] a written agreement exists between the parties containing an arbitration clause; (2) [whether] an arbitrable issue exists; and (3) [whether] the right to arbitration has [] been waived." *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004) (citing *Marine Envtl. Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003); *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999)). Where the claim is statutory in nature, the Court must consider if the authorizing legislative body intended to preclude the claim from arbitration. *See Mitsubishi Motors Corp.*, 473 U.S. at 627 ("Just as it is the congressional policy manifested in the [FAA] that requires courts liberally to construe the scope of arbitration agreements covered by that Act, it is the congressional intention expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable."); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("Although all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." (citation omitted)).

Faced with a facially valid arbitration agreement, the burden is on the party opposing arbitration to demonstrate that the agreement is invalid or the issue is otherwise non-arbitrable. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000) ("[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue."); *In re Managed Care Litig.*, No. 05-23206-CIV, 2009 WL 856321, at

*3 (S.D. Fla. Mar. 30, 2009) ("It is the burden of the party challenging a facially valid arbitration agreement to demonstrate that the agreement is in fact unconscionable."). Further, "[a]rbitration provisions will be upheld as valid unless defeated by fraud, duress, unconscionability, or another 'generally applicable contract defense.'" *Parnell*, 804 F.3d at 1146 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).

Accordingly, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp.*, 473 U.S. at 626. "This encompasses two separate inquiries: (1) whether an agreement between the parties to arbitrate exists and (2) whether that agreement is valid, i.e., whether "grounds [that] exist at law or in equity for the revocation of any contract," are applicable to the parties' agreement to arbitrate." *Wiles v. Palm Springs Grill, LLC*, No. 15-cv-81597, 2016 WL 4248315, at *1 (S.D. Fla. Aug. 11, 2016) (quoting 9 U.S.C. § 2); *see also Rent-A-Ctr., W., Inc.*, 561 U.S. at 70-71 (explaining that challenges to the validity of the arbitration agreement, as opposed to challenges to the validity of the "contract as a whole," are generally for the court to decide); *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854-55 (11th Cir. 1992) (holding that court should decide threshold issue of whether an agreement exists), *abrogated in part on other grounds*, *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329-30 (11th Cir. 2016).

The FAA creates a "presumption of arbitrability" such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115-16 (11th Cir. 2014) (quotation marks omitted); *see Granite Rock Co.*, 561 U.S. at 301. However, "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Dasher*, 745 F.3d at 1116 (quotation marks omitted); *see also Granite Rock Co.*, 561 U.S. at 301 (directing courts to "apply[] the presumption of arbitrability

only" to "a validly formed and enforceable arbitration agreement"). Where the parties dispute whether an agreement to arbitrate exists at all, the Court must begin by making a threshold determination as to whether a contract has been formed before assessing any delegation clause. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." (citation omitted)); *Compere v. Nusret Miami, LLC*, 396 F. Supp. 3d 1194, 1200 (S.D. Fla. 2019); *Seminole Cty. Tax Collector v. Domo, Inc.,* No. 6:18-cv-1933-Orl-40DCI, 2019 WL 1901019, at *9 (M.D. Fla. Feb. 13, 2019) ("Having found that a valid agreement to arbitrate exists between the parties, the Court now considers the application of the delegation provision within the arbitration clause."), *report and recommendation adopted*, No. 6:18-cv-1933-Orl-40-DCI, 2019 WL 1772108 (M.D. Fla. Apr. 23, 2019).

The party asserting the existence of the contract containing the arbitration agreement "must prove its existence by a preponderance of the evidence." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). The Court of Appeals for the Eleventh Circuit has explained that

> a "summary judgment-like standard" is appropriate for determining the existence of an arbitration agreement. [*Bazemore*, 827 F.3d] at 1333. As such, "a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement." *Id.* (internal quotation marks omitted). "Where there is no such dispute, a trial is unnecessary." *Larsen v. Citibank FSB*, 871 F.3d 1295, 1308 (11th Cir. 2017). A dispute unsupported by the evidence or created by evidence that is "merely colorable" or "not significantly probative" is not "genuine." *Bazemore*, 827 F.3d at 1333 (internal quotation marks omitted). Conclusory allegations that lack specific, supporting facts lack probative value for a party opposing summary judgment. *Id.* Further, "entry of summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 1334 (internal quotation marks omitted).

*Lawhon v. Aaron's, Inc.*, No. 8:19-cv-2333-T-36JSS, 2020 WL 2219665, at *6 (M.D. Fla. May 7, 2020). If the Court concludes that a valid and enforceable agreement exists and that the resisting

party fails to raise a genuine issue of fact regarding the existence of such an agreement, the Court then considers whether an arbitrable issue exists. *Hilton v. Fluent, LLC*, 297 F. Supp. 3d 1337, 1341 (S.D. Fla. 2018).

Thus, the Court turns now to the first factor discussed above — namely, whether a valid agreement exists. *Henry Schein, Inc.*, 139 S. Ct. at 530. The threshold determination of whether an arbitration agreement exists at all is "simply a matter of contract." *First Options of Chi., Inc.*, 514 U.S. at 943. State law governs when determining whether an enforceable agreement to arbitrate exists. *Bazemore*, 827 F.3d at 1329. In Florida, a valid contract requires "offer, acceptance, consideration and sufficient specification of essential terms." *St. Joe Corp.*, 875 So. 2d at 381. Likewise, "mutual assent is a prerequisite for the formation of any contract." *Kolodziej v. Mason*, 774 F.3d 736, 741 (11th Cir. 2014) (citing *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989) ("Mutual assent is an absolute condition precedent to the formation of the contract.")). "Mutual assent is not necessarily an independent 'element' unto itself; rather, [courts] evaluate the existence of assent by analyzing the parties' agreement process in terms of offer and acceptance." *Id.* (footnote omitted) (citing *Newman v. Schiff*, 778 F.2d 460, 465 (8th Cir. 1985)). "A valid contract — premised on the parties' requisite willingness to contract — may be 'manifested through written or spoken words, or inferred in whole or in part from the parties' conduct.'" *Id.* (quoting *L&H Constr. Co. v. Circle Redmont, Inc.*, 55 So. 3d 630, 634 (Fla. 5th DCA 2011)). In addition, courts employ "an objective test . . . to determine whether a contract is enforceable." *See Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985). While there is no requirement that a contract be signed by the parties, "there must be sufficient proof that the parties actually agreed to arbitrate." *BDO Seidman, LLP v. Bee*, 970 So. 2d 869, 874 (Fla. 4th DCA 2007).

Plaintiff's Response does not argue that the Agreement does not exist, nor does he contend that the Agreement lacked any of the required elements during contract formation. Rather,

8

"Plaintiff contends that the [Agreement] was not signed by Defendant [IRINOX North America, Inc.'s President, Ronald Van Bakergem,] or a witness, therefore the [Agreement] is invalid because it has not been executed by all parties." ECF No. [16] at 4. "Additionally, the signature of the Plaintiff is dated '9/16/2019' and the [Agreement] is purported to have an effective date of 'December 9, 2019.'" *Id.* Plaintiff maintains that these flaws "should call into question the validity of the [Agreement] and would raise an issue of disputed material fact . . . ." *Id.*

Upon review, however, the Court concludes that Plaintiff's argument regarding the alleged invalidity of the parties' Agreement due to the absence of Defendant's signature is without merit. "[W]hile the FAA requires that the arbitration agreement be in writing, it does not require that it be signed by the parties." *Sundial Partners, Inc. v. Atl. Street Capital Mgmt. LLC*, No. 8:15-cv-861-T-23JSS, 2016 WL 943981, at *5 (M.D. Fla. Jan. 8, 2016) (citing 9 U.S.C. § 2; *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005)). However, Florida law does not have such a signature requirement: "A contract may be binding on a party even in the absence of that party's signature if the parties assented to the contract in another manner." *Lawhon*, 2020 WL 2219665, at *8 (citing *Sundial Partners, Inc.*, 2016 WL 943981, at *5); *see also Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1092 (11th Cir. 2004) ("The last act necessary to complete a contract is the offeree's communication of acceptance to the offeror."); *Seminole Cty. Tax Collector*, 2019 WL 1901019, at *6 ("Here, the last act necessary to complete the contract was its acceptance by Plaintiff in Florida . . . . [and] the contract was valid and enforceable upon Plaintiff's acceptance . . . of Defendant's offer."). Moreover, "Florida law permits the offeror to specify the terms and manner of acceptance." *Grant v. Morgan Stanley Smith Barney LLC*, No. 16-81924-CIV, 2017 WL 1044484, *3 (S.D. Fla. Mar. 20, 2017) (citations omitted). "Indeed, because the offeror is not required to limit the manner of acceptance to an affirmative response, 'a party may manifest assent to an agreement to arbitrate by failing to opt

out of the agreement within a specified time.'" *Id.* (quoting *Dorward v. Macy's, Inc.*, No. 2:10-cv-669-FtM-29DNF, 2011 WL 2893118, at *10 (M.D. Fla. July 20, 2011)).

"An agreement is formed when a specific offer is communicated to the offeree, and acceptance is subsequently communicated to the offeror . . . ." *Silvers v. Verbata, Inc.*, No. 5:17-cv-169-Oc-34PRL, 2018 WL 1863777, at *3 (M.D. Fla. Mar. 22, 2018) (citations and internal quotation marks omitted), *report and recommendation adopted*, No. 5:17-cv-169-Oc-34PRL, 2018 WL 1992204 (M.D. Fla. Apr. 27, 2018). As such, a "lack of a signature is not fatal to the enforceability of [an] arbitration agreement . . . . Because the object of a signature is to show mutuality or assent, a contract may be binding on a party notwithstanding the absence of a signature if the parties assented to the contract in another manner." *Sundial Partners, Inc.*, 2016 WL 943981, at *5. "The fact that the contract is not signed by both parties is also not a barrier to enforcement [where] the agreement does not specify that both signatures are a condition precedent to forming a binding contract." *Id.* (citation omitted); *see also Integrated Health Servs. of Green Briar, Inc. v. Lopez-Silvero*, 827 So. 2d 338, 339 (Fla. 3d DCA 2002) ("The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, for example, by the acts or conduct of the parties." (internal quotation marks omitted)).

"[W]hen an arbitration agreement is not signed, [courts] look to a party's words and conduct to determine whether the party assented to the agreement." *Santos v. Gen. Dynamics Aviation Servs. Corp.*, 984 So. 2d 658, 661 (Fla. 4th DCA 2008) (finding that plaintiff's continued employment after receipt of contract sufficiently demonstrated his assent to the terms of the arbitration agreement, and sufficient consideration because "the agreement created a mutual obligation to arbitrate"). "Acceptance of an arbitration agreement may be done by performance, which includes continued employment." *Grant*, 2017 WL 1044484, *3 (citations omitted); *see also Sundial Partners, Inc.*, 2016 WL 943981, at *5 (collecting cases finding acceptance of an

agreement through performance, and determining that plaintiff's continued performance after receipt of the agreement demonstrated assent to the arbitration provision in that agreement). "Accordingly, a party may manifest assent to an agreement to arbitrate by failing to opt out of the agreement within a specified time." *Dorward*, 2011 WL 2893118, at *9; *see also Armont*, 2019 WL 7666549, at *8-10.

Defendants have produced a facially valid Agreement between the parties that Plaintiff signed, and Plaintiff has failed to cite to any law supporting his arguments that the Agreement should be invalidated due to the absence of Defendant's signature. Moreover, the Court notes that Plaintiff's Complaint explicitly acknowledges that the parties entered into the Agreement — a concession which is fatal to his arguments of invalidity in his Response. *See* ECF No. [1] at 4 n.1 ("Plaintiff and Defendants signed something called an 'Employee Separation and Release Agreement,' at the end of Plaintiff's employment."). Thus, there is no genuine dispute regarding the existence of the parties' Agreement.

Having determined that a valid agreement to arbitrate exists, the Court turns to the application of the delegation provision and the question of whether arbitrable issues exist. *See Seminole Cty. Tax Collector*, 2019 WL 1901019, at *9; *Hilton*, 297 F. Supp. 3d at 1341. The United States Supreme Court has explained that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc.*, 561 U.S. at 69. "An antecedent agreement of this kind is typically referred to as a 'delegation provision.'" *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (quoting *Rent-A-Ctr., W., Inc.*, 561 U.S. at 68). When "an arbitration agreement contains a delegation provision — committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable — the courts only retain jurisdiction to review a challenge to that specific provision." *Parnell*, 804 F.3d at 1144. "Only if

[a court] determine[s] that the delegation clause is itself invalid or unenforceable may [it] review the enforceability of the arbitration agreement as a whole." *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1335 (11th Cir. 2016).

"When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc.*, 139 S. Ct. at 528. Nevertheless, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chi., Inc.*, 514 U.S. at 944 (alterations omitted) (quoting *AT&T Techs., Inc.*, 475 U.S. at 649). Rather, such a gateway question "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr., W., Inc.*, 561 U.S. at 69. When a party challenges the contract as a whole or another provision of the contract, it does not prevent a court from enforcing the arbitration clause because "an arbitration provision is severable from the remainder of the contract." *Id.* at 71.

The Eleventh Circuit has further explained that, "when parties incorporate the rules of the [American Arbitration] Association into their contract, they 'clearly and unmistakably agree[] that the arbitrator should decide whether the arbitration clause [applies].'" *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (quoting *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005)). Here, the Agreement indisputably incorporates the Commercial Arbitration Rules of the American Arbitration Association ("AAA Rules"). These Rules explicitly require threshold jurisdictional questions concerning scope to be resolved by the arbitrator. In particular, Rule 7 of the AAA Rules governs the arbitrator's jurisdiction and provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the

arbitration agreement . . . ." Am. Arbitration Ass'n, Commercial Arbitration Rules (last amended Oct. 1, 2013), https://adr.org/sites/default/files/Commercial%20Rules.pdf. The AAA Rules also grant the arbitrator authority to determine "the existence or validity of a contract of which an arbitration clause forms a part." *Id.* The incorporation of the AAA Rules and the Agreement's application of those Rules to disputes under the Agreement "clearly and unmistakably" indicate that the parties "contracted to submit questions of arbitrability to an arbitrator." *U.S. Nutraceuticals, LLC*, 769 F.3d at 1311 (citing *Terminix Int'l Co.*, 432 F.3d at 1332).

"When parties clearly and unmistakably defer the issue of arbitrability to the arbitrator, however, the court should compel arbitration without assessing the arbitration agreement's validity or scope." *Steffanie A. v. Gold Club Tampa, Inc.*, No. 8:19-cv-3097-T-33TGW, 2020 WL 588284, at *2 (M.D. Fla. Feb. 6, 2020) (citing *Terminix Int'l Co.*, 432 F.3d at 1332-33). Moreover, because this Court operates under the binding mandate of both *U.S. Nutraceuticals, LLC* and *Terminix International Co.*, the Court is obligated to compel arbitration under these circumstances.

*Terminix International Co.* embodies a logical result: where the parties agree to resolve "all disputes pursuant to AAA Rules," Rule 7 applies. 432 F.3d at 1319. The Agreement in this case explicitly states that the AAA Rules are applicable to disputes arising under the Agreement or its performance. ECF No. [7-1] at 4, ¶ 12.2. Therefore, the arbitrator must address Plaintiff's remaining arguments concerning the existence, scope, or validity of the Arbitration Clause in the Agreement, including any possible ambiguities regarding the arbitration panel's jurisdiction, as well as the purported unconscionability of the provisions in the Agreement. *See Spivey v. Teen Challenge of Fla., Inc.*, 122 So. 3d 986, 992 (Fla. 1st DCA 2013) ("Courts are required to indulge every reasonable presumption in favor of arbitration recognizing it as a favored means of dispute resolution." (quoting *Am. Int'l Grp., Inc. v. Cornerstone Bus., Inc.*, 872 So. 2d 333, 338 (Fla. 2d DCA 2004))).

The Court must also determine whether the issues Plaintiff raises regarding the Agreement challenge the delegation provision itself or the Agreement as a whole. In *Rent-A-Center, West, Inc.*, the plaintiff argued that the "arbitration agreement as a whole [wa]s substantively unconscionable" and that he "opposed the motion to compel on the ground that the entire arbitration agreement, including the delegation clause, was unconscionable." 561 U.S. at 73. Here, similar to the plaintiff in *Rent-A-Center, West, Inc.*, nowhere in the Response does Plaintiff challenge the delegation provision within the Agreement. Although Plaintiff generally challenges being subjected to the Arbitration Clause, and its alleged unconscionability under the FLSA, the Court need not consider these arguments as they are not specific challenges to the delegation provision. *See Rent-A-Ctr., W., Inc.*, 561 U.S. at 73 ("[W]e need not consider th[e] claim [regarding the arbitration agreement's procedural and substantive unconscionability] because none of Jackson's substantive unconscionability challenges [were] specific to the delegation provision.").

Further, Plaintiff does not suggest that the Arbitration Clause itself is invalid or unenforceable. *See Kinko's, Inc. v. Payne*, 901 So. 2d 354, 355 (Fla. 2d DCA 2005) ("the agreement of a party to submit to arbitration is sufficient consideration to support the other party's agreement to do the same"). Under the FAA, the role of this Court is "to rigorously enforce agreements to arbitrate," *Hemispherx Biopharma, Inc.*, 553 F.3d at 1366, and Plaintiff's claim that the Agreement is invalid does not transform the otherwise valid Arbitration Clause into an unenforceable one. Instead, the FAA mandates that this Court direct the parties in this case to "proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.*, 470 U.S. at 213. Moreover, consistent with the Supreme Court's instructions, Plaintiff's failure to specifically challenge the delegation provision requires that this Court "treat it as valid under § 2 [of the FAA], and [] enforce it under §§ 3 and 4, leaving any challenge to the validity of the [a]greement as a whole for the arbitrator." *Rent-A-Ctr., W., Inc.*,

14

561 U.S. at 72; *see also Parnell*, 804 F.3d at 1149 ("[T]he result in this case merely follows the directive set forth in [*Rent-A-Center, West, Inc.*] and emphasizes that when a would-be plaintiff seeks to challenge an arbitration agreement containing a delegation provision, he or she must challenge the delegation provision directly."). This does not preclude Plaintiff from challenging, before the arbitrator, the validity of the Arbitration Clause or from otherwise challenging the enforceability of the Agreement.

Additionally, Plaintiff argues that the issues in this case are beyond the scope of the Arbitration Clause. Notably, however, Plaintiff does not dispute the validity of the Arbitration Clause itself, which delegates the issues of arbitrability and enforceability to the arbitrator. Further, the Arbitration Clause states that it covers disputes arising from the Agreement or its performance, which includes whether such disputes should be submitted to arbitration for resolution. *See* ECF No. [7-1] at 4, ¶ 12.2. As such, Plaintiff's contention is misplaced. The very argument Plaintiff makes against arbitration is a question that, pursuant to the Agreement between the parties, must be submitted to the arbitrator. *Jones*, 866 F.3d at 1269-71; *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or allegations of waiver, delay, or a like defense to arbitrability.").

Much like the parties delegated any disputes surrounding the validity of the Arbitration Clause to the arbitrator, they have likewise delegated the resolution of the scope of the provision to the arbitrator. As explained above, Plaintiff has not specifically challenged the delegation provision. Thus, the Court is bound to resolve this issue in favor of a valid Arbitration Clause under § 2 of the FAA and is required to enforce it under §§ 3 and 4. *Rent-A-Ctr., W., Inc.*, 561 U.S.

at 72. Plaintiff is not precluded from raising any challenges to the scope of the Arbitration Clause before the arbitrator.

As explained by the Supreme Court, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc.*, 139 S. Ct. at 530; *see also Wiles*, 2016 WL 4248315, at *2 ("An exception to the default rule that courts determine challenges to the validity of the arbitration agreement itself exists where 'there is "clea[r] and unmistakabl[e]" evidence' that the parties agreed to also arbitrate arbitrability. In that case, even challenges to the validity of the arbitration clause itself are decided by the arbitrator rather than the court." (citing *First Options of Chi., Inc.*, 514 U.S. at 944; *Rent-A-Ctr., W., Inc.*, 561 U.S. at 69-70 & n.1)). Instead, "[a] delegation clause gives an arbitrator authority to decide even the initial question whether the parties' dispute is subject to arbitration." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019) (citing *Rent-A-Ctr., W., Inc.*, 561 U.S. at 68-69). "[U]nder the severability principle, [courts] treat a challenge to the validity of an arbitration agreement (or a delegation clause) separately from a challenge to the validity of the entire contract in which it appears." *Id.* (citing *Rent-A-Ctr., W., Inc.*, 561 U.S. at 70-71 (2010)). "Unless a party specifically challenges the validity of the agreement to arbitrate, both sides may be required to take all their disputes — including disputes about the validity of their broader contract — to arbitration." *Id.* The Eleventh Circuit has further reaffirmed this principle, stating that "[i]f . . . [the party's] claims of adhesion, unconscionability, . . . and lack of mutuality of obligation pertain to the contract as a whole, and not to the arbitration provision alone, then these issues should be resolved in arbitration." *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 877 (11th Cir. 2005) (citations omitted) (quoting *Benoay*, 805 F.2d at 1441).

"Because the FAA is at bottom a policy guaranteeing the enforcement of private contractual arrangements, we look first to whether the parties agreed to arbitrate a dispute, not to

general policy goals, to determine the scope of the agreement." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1214 (11th Cir. 2011) (quoting *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)). Further, "[c]hallenges to the validity of an arbitration agreement are generally for judicial determination while challenges to the validity of the contract as a whole are for the arbitrator to decide in the first instance." *Wiles*, 2016 WL 4248315, at *3 (citing *Rent-A-Ctr., W., Inc.*, 561 U.S. at 70-71); *Buckeye Check Cashing, Inc.*, 546 U.S. at 444 (explaining that challenges to the contract as a whole are those based "either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid").

The Court is unpersuaded by Plaintiff's argument that his FLSA claim cannot be subjected to arbitration because it is contrary to the purpose of the FLSA. In particular, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp.*, 473 U.S. at 628. In addition, Plaintiff's claims are unavailing given the fact that "the Eleventh Circuit has approved the arbitrability of FLSA claims." *Wiles*, 2016 WL 4248315, at *3 (citing *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1334 (11th Cir. 2014)).[1]

---

[1] *See, e.g.*, *Matthews v. Ultimate Sports Bar, LLC*, 621 F. App'x 569, 571 (11th Cir. 2015) ("Thus, we [have] affirmed the district court's grant of a motion to compel arbitration where, like here, employees brought FLSA claims against their employer." (citing *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1364 (11th Cir. 2005); *Walthour*, 745 F.3d at 1334)); *Melo v. Falls Mgmt. Servs. Co.*, No. 18-62435-CIV, 2019 WL 5291007, at *6-7 (S.D. Fla. July 11, 2019) (recounting the case law in this Circuit regarding the arbitrability of FLSA claims and concluding that "Plaintiff's FLSA claim is within the scope of his agreement to arbitrate"), *report and recommendation adopted*, No. 18-62435-CIV, 2019 WL 5290888 (S.D. Fla. July 26, 2019); *Gonzalez v. AA Varco Moving & Storage, Inc.*, No. 18-62988-CIV, 2019 WL 2245478, at *2-3 (S.D. Fla. Mar. 18, 2019) (collecting cases that held FLSA claims could be submitted to arbitration and agreeing with the conclusions in those cases), *report and recommendation adopted*, No. 18-62988-CIV, 2019 WL 2245268 (S.D. Fla. Apr. 26, 2019); *Singh v. MEDNAX Servs. Inc.*, No. 17-61792-CIV, 2018 WL 5098962, at *3 (S.D. Fla. Aug. 28, 2018) ("Courts in this circuit have found FLSA claims clearly fall within agreements to arbitrate "all controversies or claims arising out of or relating to" an employment agreement.") (collecting cases).

Further, in light of the Court's conclusion that the parties clearly agreed to submit arbitrability issues to the arbitrator, "an arbitrator and not a court should decide the validity of the [FLSA] remedial restriction provisions, because '[a] court compelling arbitration should decide only such issues as are essential to defining the nature of the forum in which a dispute will be decided.'" *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1032-33 (11th Cir. 2003) (quoting *Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F.3d 1255, 1261 (11th Cir. 2003)); *see also McDougal v. Comcast Corp.*, No. 16-81906-CIV, 2017 WL 3726040, at *2 (S.D. Fla. Feb. 24, 2017) ("When in doubt, questions of arbitrability should be resolved in favor of arbitration. Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001))).[2]

The Court also briefly notes that the language of the parties' Arbitration Clause clearly encompasses Plaintiff's claims because it includes disputes arising out of the Agreement or its performance — including Plaintiff's performance in honoring the general release of any and all claims against Defendant. *See* ECF No. [7-1] at 2, ¶ 2. "Although the Arbitration [Clause] does not specifically state that FLSA claims are arbitrable, Plaintiff's claims fall squarely within the scope of the Arbitration [Clause]. A dispute over whether Plaintiff is entitled to overtime compensation under the FLSA creates a claim that would arise out of the Agreement." *Hamlett v. Owners Advantage, LLC*, No. 13-80416-CIV, 2013 WL 4711165, at *2-3 (S.D. Fla. Aug. 30, 2013); *cf. Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1059 (11th Cir. 1998) ("an arbitration agreement [need not] specifically list every federal or state statute it purports to cover.").

---

[2] For this reason, the Court also declines to address Defendants' request for attorneys' fees, which is more appropriately submitted to the arbitrator.

Finally, Defendants request that this case be dismissed upon being submitted to arbitration. However, "because a settlement of FLSA claims would appear to require judicial supervision, the Court finds that a stay is the more appropriate course to take here." *Downey v. Robert W. Baird & Co. Inc.*, No. 6:07-cv-1180-Orl-31DAB, 2007 WL 2729578, at *2 (M.D. Fla. Sept. 18, 2007); *see also Hinkle v. Dollar Tree Stores, Inc.*, No. 6:16-cv-1453-Orl-41DAB, 2016 WL 11121074, at *1 (M.D. Fla. Sept. 20, 2016) ("Even if it appears likely that the Eleventh Circuit would afford discretion to dismiss a case rather than stay the proceeding where all claims before the court are arbitrable, in an FLSA case, any settlement will require judicial supervision; thus, a stay is the more appropriate course to take in this case." (footnote omitted) (citing *Downey*, 2007 WL 2729578, at *2)), *report and recommendation adopted*, No. 6:16-cv-1453-Orl-41DCI, 2016 WL 11121073 (M.D. Fla. Oct. 13, 2016); *Slawienski v. Nephron Pharm. Corp.*, No. 1:10-cv-0460-JEC, 2010 WL 5186622, at *3 (N.D. Ga. Dec. 9, 2010) (citing *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982) (noting that an FLSA claim can only be settled under the supervision of the Secretary of Labor or with the approval of the court after scrutinizing the settlement for fairness)). Accordingly, the Court concludes that this matter must be stayed pending the parties' participation in arbitration.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion, **ECF No. [7]**, is **GRANTED in part**.
2. The Clerk of Court is directed to **STAY** the above-styled action pending arbitration. The Clerk shall **ADMINISTRATIVELY CLOSE** the case and it shall remain closed for administrative purposes only, and without prejudice to the parties to move to reopen the case once the arbitration has been completed.

Case No. 20-cv-20533-BLOOM/Louis

3. To the extent not otherwise disposed of, all scheduled hearings are **CANCELED,** any pending motions are **DENIED AS MOOT**, and all pending deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 18, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record