UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-20533-BLOOM/Louis

FRANCISCO J. DE POMBO,
and all others similarly situated
under 29 U.S.C. § 216(b),

    Plaintiff,

v.

IRINOX NORTH AMERICA, INC.
and JOHN HORVATH, individually,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendants IRINOX North America, Inc. and John Horvath's (collectively, "Defendants") Motion for Court to Appoint Arbitrator and for Arbitration to Proceed in Compliance with the Arbitration Agreement, ECF No. [38] ("Motion"). Plaintiff Francisco De Pombo ("Plaintiff") filed a Response in Opposition, ECF No. [40] ("Response"), to which Defendants filed a Reply, ECF No. [41] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

### I. BACKGROUND

On February 5, 2020, Plaintiff initiated the instant action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), against Defendants, asserting a single count under the FLSA for the nonpayment of overtime wages incurred while Plaintiff was employed by Defendants. ECF No. [1]. Defendants filed a motion on March 16, 2020, seeking to compel arbitration and dismiss the case because Plaintiff entered into an "Employee Separation and

Release Agreement," ECF No. [38-1] ("Agreement"), which states: "Should a dispute arise concerning this Agreement or its performance, such dispute shall be resolved at the election of the party seeking to enforce the Agreement . . . by binding arbitration administered by the American Arbitration Association [("AAA")] under its commercial dispute resolution rules." *Id.* at 4, ¶ 12.2 ("Arbitration Clause"). This Court granted the motion in part and stayed the case pending arbitration. ECF No. [28] ("Order Compelling Arbitration").

Plaintiff subsequently commenced arbitration proceedings before the AAA. However, Defendants contend that, instead of enforcing the indemnification clause in the Agreement,[1] the arbitrator ordered Defendants to pay $1,900.00 of the initial arbitration fee despite what Defendants characterize as Plaintiff's refusal to show his inability to pay. ECF No. [40-3]. Defendants refused to pay the fee and the AAA accordingly administratively closed the case and declined to administer any future employment matter involving Defendants. ECF No. [38-3] at 10.

## II. DISCUSSION

Defendants now file the instant Motion requesting that the Court appoint an arbitrator to continue the arbitration proceedings pursuant to the parties' Agreement and 9 U.S.C. §§ 4, 5, arguing that the choice of arbitral forum was not integral to the parties' Agreement and that, regardless, the choice of arbitral forum is severable from the rest of the Agreement. Plaintiff, on the other hand, strongly opposes any such appointment, arguing that the arbitration was hindered

---

[1] The Agreement's indemnification clause states, in relevant part, as follows:

> Employee agrees to indemnify and hold harmless the Released Parties and each of them, jointly or severally, against any loss or liability whatsoever, including reasonable attorney's fees, caused by any action or proceeding before any court or government agency, commission, division, or department of any state, federal or local governing body, which is brought by the Employee or his successors-in-interest, if such action or proceeding arises out or is related to any claim, demand or cause of action released herein.

ECF No. [38-1] at 3, ¶ 4.

by Defendants' own refusal to pay the required fee, and that Defendants' gamesmanship should not be rewarded through the appointment of another arbitrator because doing so would be inequitable and would "likely become so cost prohibitive that it [would] presumably chill" Plaintiff's rights. ECF No. [40] at 8.[2] Remarkably, however, the remaining arguments presented in Plaintiff's Response simply rehash the arguments presented in response to Defendants' motion to compel arbitration, which this Court rejected in its Order Compelling Arbitration. As such, these arguments will not be addressed again at this stage.

"[T]he FAA provides that, when a recalcitrant party refuses to proceed with an arbitration agreement, District Courts 'shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.'" *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1349 (11th Cir. 2014) (emphasis omitted) (quoting 9 U.S.C. § 4). Moreover, § 5 of the FAA states:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

---

[2] The United States Supreme Court has held that, where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp-Ala. v. Randolph*, 531 U.S. 79 (2000); *see also Roberson v. Clear Channel Broad., Inc.*, 144 F. Supp. 2d 1371, 1373 (S.D. Fla. 2001). Further, the Supreme Court emphasized that "it is the party seeking to avoid arbitration who has the burden to show the likelihood of prohibitive costs, and suggested that, upon a threshold showing, the burden of production of evidence might shift to the party seeking arbitration to counter that showing." *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1258 (11th Cir. 2003) (citing *Green Tree Fin. Corp.-Ala.*, 531 U.S. at 92). Thus, "absent a record establishing that the plaintiff 'likely will incur prohibitive costs,' an agreement to arbitrate must be enforced." *Id.* (citing *Bess v. Check Express*, 294 F.3d 1298, 1304 (11th Cir. 2002)). Here, Plaintiff has failed to present any evidence to support his assertion that the arbitration will cause him to incur prohibitive costs that would foreclose his ability to seek relief. As such, the Court concludes that Plaintiff has not satisfied his burden of establishing that the agreement to arbitrate should not be enforced.

9 U.S.C. § 5.

The Court of Appeals for the Eleventh Circuit has set forth the requisite analysis to employ when determining whether a substitute arbitrator may be appointed pursuant to § 5 of the FAA and the parties' contractual agreement.

> Where the chosen forum is unavailable . . . or has failed for some reason, § 5 applies and a substitute arbitrator may be named. *Astra Footwear Indus. v. Harwyn Int'l, Inc.*, 442 F. Supp. 907, 910 (S.D.N.Y.), *aff'd*, 578 F.2d 1366 (2d Cir. 1978). Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an "ancillary logistical concern" will the failure of the chosen forum preclude arbitration. *See Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1364 (N.D. Ill. 1990) (citing *Nat'l Iranian Oil Co. v. Ashland Oil*, 817 F.2d 326 (5th Cir. 1987)).

*Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000). "To determine whether the forum selection clause is integral, [courts] must consider how important the term was to one or both of the parties at the time they entered into the agreement." *Flagg v. First Premier Bank*, 644 F. App'x 893, 896 (11th Cir. 2016) (quoting *Inetianbor*, 768 F.3d at 1350). Further, courts determine the parties' intent by examining the text of the arbitration provision. *Id.*[3] Where the choice of arbitral forum is not deemed to be integral to the parties' agreement, a court may then appoint a substitute arbitrator pursuant to § 5 of the FAA.

In this case, the parties' Agreement contains a dispute resolution clause that states "[s]hould a dispute arise concerning this Agreement or its performance, such a dispute shall be

---

[3] The "polestar guiding the court in the construction of a written contract is the intent of the parties." *Crastvell Trading Ltd. v. Marengere*, 90 So. 3d 349, 353 (Fla. 4th DCA 2012). "The intent of the parties to the contract should govern the construction of a contract. To determine the intent of the parties, a court should consider the language in the contract, the subject matter of the contract, and the object and purpose of the contract." *Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd.*, 593 So. 2d 195, 197 (Fla. 1992); *see also Circuitronix, LLC v. Kapoor*, 440 F. Supp. 3d 1345, 1358-59 (S.D. Fla. 2020), *appeal dismissed*, No. 20-11145-GG, 2020 WL 3524507 (11th Cir. June 9, 2020). Further, courts are to "read provisions of a contract harmoniously in order to give effect to all portions thereof." *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000); *see also Lalow v. Codomo*, 101 So. 2d 390, 393 (Fla. 1958) ("The intention of the parties must be determined from an examination of the whole contract and not from the separate phrases or paragraphs." (citation omitted)).

resolved at the election of the party seeking to enforce the Agreement, either by court action, or by binding arbitration administered by the American Arbitration Association under its commercial dispute resolution rules." ECF No. [38-1] at 4, ¶ 12.2. The clause also notes that, "[i]f arbitration is initiated, the arbitration shall be held in the State of FLORIDA." *Id.* Aside from this arbitration clause, the Agreement does not refer to the AAA in any other provision.

Defendants argue that the choice of arbitral forum was not integral to the parties' Agreement, but rather was merely an ancillary logistical concern, as evidenced by the lack of reference to the AAA anywhere else in the Agreement. This absence of any additional reference to the AAA, Defendants contend, indicates that the choice of arbitral forum in this case is distinguishable from the integral forum selection clauses in *Inetianbor* and *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331 (11th Cir. 2016), and comparable to the ancillary arbitration clauses in *Brown* and *Jones v. Sallie Mae, Inc.*, No. 3:13-cv-837-J-99MMH-MCR, 2013 WL 6283483, at *1 (M.D. Fla. Dec. 4, 2013). Aside from conclusory statements without any legal analysis that the choice of arbitral forum in this case was integral to the parties' Agreement, Plaintiff makes little effort to address the cases cited by Defendants. *See Turean v. Mastec, Inc.*, No. 10-60494-CIV, 2010 WL 11597760, at *2 (S.D. Fla. Aug. 30, 2010) ("A plaintiff challenging the enforcement of an arbitration agreement bears the burden to establish, by substantial evidence, any defense to the enforcement of a contract." (citing *Bess v. Check Express*, 294 F.3d 1298, 1306-07 (11th Cir. 2002))). Nevertheless, as explained below, the Court agrees with Defendants that the selection of the AAA as the arbitral forum in this case was merely an ancillary logistical concern that permits the appointment of a substitute arbitrator.

The Eleventh Circuit analyzed two highly similar arbitration agreements in *Parm* and *Inetianbor*,[4] both of which expressly required that any disputes "be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation [(the "Tribe")] by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement." *See Parm*, 835 F.3d at 1333; *Inetianbor*, 768 F.3d at 1348. Both agreements also referred to the Tribe in numerous other provisions, and both agreements mandated the exclusive application of the Tribe's laws and jurisdiction. *See Parm*, 835 F.3d at 1338; *Inetianbor*, 768 F.3d at 1351. When the tribal arbitral forum was unavailable in, the defendants in *Parm* and *Inetianbor* sought to have a substitute arbitral forum appointed pursuant to § 5 of the FAA. *See Parm*, 835 F.3d at 1334; *Inetianbor*, 768 F.3d at 1349.

The Eleventh Circuit, in holding that the choice of arbitral forum provisions was integral to the parties' agreements in both cases, examined the contractual language to determine the parties' intent in selecting the Tribe as the arbitral forum. *See Parm*, 835 F.3d at 1334; *Inetianbor*, 768 F.3d at 1349. Specifically, the Eleventh Circuit not only noted the exclusive and mandatory language used in the forum selection provisions, but also emphasized the numerous references to the Tribe and repeated requirements throughout the entirety of both agreements that the Tribe be involved in the resolution of any disputes. *See Parm*, 835 F.3d at 1338 ("[I]dentical to *Inetianbor*, several provisions in Parm's loan agreement expressly and repeatedly reference the [Tribe] and the exclusive application of its laws and jurisdiction. These pervasive references to the tribal forum and its rules provide evidence that the forum selection clause was not simply an ancillary concern but an integral aspect of the parties' agreement to arbitrate." (citing *Inetianbor*, 768 F.3d at 1350-

---

[4] Because of the similarity between the arbitration agreements in both *Parm* and *Inetianbor*, and because the Eleventh Circuit's analysis of these provisions in both cases was nearly identical, the Court will address both of these cases together.

6

51)); *see also Inetianbor*, 768 F.3d at 1351 ("A number of other provisions of the agreement expressly reference the Tribe, including the very first provision of the contract, which explains that the agreement 'is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation.' In total, the contract references the Tribe in five of its nine paragraphs regarding arbitration."). Thus, because of the repeated and pervasive references to the Tribe, the exclusive application of the Tribe's laws and jurisdiction, and the tribal forum as the exclusive arbitral forum, the Eleventh Circuit concluded that the contractual language clearly indicated the parties' intent to make the tribal forum an integral part of their contractual agreements. *See Parm*, 835 F.3d at 1338; *Inetianbor*, 768 F.3d at 1351-52.

The parties' Agreement fails to specify any substitute arbitral forum or any procedure for the appointment of a substitute. Further, although the Agreement sets forth that any "dispute shall be resolved . . . by binding arbitration administered by the [AAA] under its commercial dispute resolution rules," ECF No. [38-1] at 4, ¶ 12.2, as Defendants point out, the Agreement is devoid of any additional references to the AAA as the arbitral forum. Indeed, the Agreement later addresses any potential arbitration without further reference to the AAA or its rules. *Id.*

Likewise, the Agreement's indemnification clause quoted above is broadly worded to encompass any loss or liability "caused by any action or proceeding before any court or government agency, commission, division, or department of any state, federal or local governing body." *Id.* at 3, ¶ 4. Because the Court must construe all provisions of the Agreement in harmony, the omission of any further reference to the AAA and the broad wording of the remaining contractual provisions suggest that the parties did not intend for their choice of arbitral forum to be integral to their agreement. *See Lalow*, 101 So. 2d at 393 ("The intention of the parties must be determined from an examination of the whole contract and not from the separate phrases or

7

paragraphs.").[5] Additionally, unlike the language of the agreements in *Parm* and *Inetianbor*, the Agreement here does not repeatedly reference the selected arbiter or its dispute resolution rules. Nor does the lone reference to the AAA as the arbitral forum pervade the Agreement as the contracts did in *Parm* and *Inetianbor*, where the choice of tribal arbitral forum and the repeated incorporation of the Tribe and its laws into the language of the agreements were so pervasive as to clearly indicate that the selected tribal forum was integral to the parties' agreements. *See Parm*, 835 F.3d at 1338; *Inetianbor*, 768 F.3d at 1351; *cf. Flagg*, 644 F. App'x at 896 (concluding that the selection of the NAF pervaded the arbitration provision because it "was designated as the exclusive forum and its Code of Procedure was selected to govern all claims," and it "directed consumers to file their claims with and obtain required forms from any NAF office, online at the NAF website, or by sending a request to the NAF's mailing address"). Thus, the Court does not find, as Plaintiff cursorily contends, that the choice of arbitral forum here was intended to be integral to the parties' Agreement.

Moreover, the Court concludes that the appointment of a substitute arbitral forum is also appropriate in this case because the parties' Agreement contains a severability clause, which states that, "[i]n the event that any provision of this Agreement is held to be unenforceable under applicable law, this Agreement will continue in full force and effect without such provision and will be enforceable in accordance with its terms." ECF No. [38-1] at 4, ¶ 12.3. Defendants assert that, even if the provision on the parties' choice of arbitral forum is deemed to be unenforceable

---

[5] *See also Inetianbor*, 768 F.3d at 1356 ("Putting aside the issue of when ordinary arbitration terms are integral, particularly where the contract contains a severability clause, . . . in *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000), and its progeny, where arbitration was compelled, the forum became unavailable because circumstances changed during the time between the signing of the arbitration agreement and the time of the dispute. [In *Inetianbor*], the alleged forum and procedures selected never existed. At the time the parties signed the agreement to arbitrate, the Tribe did not have consumer dispute rules and did not involve itself in private arbitrations." (Restani, J., concurring)); *Ranzy v. Tijerina*, 393 F. App'x 174, 176 (5th Cir. 2010) ("a federal court need not compel arbitration in a substitute forum if the designated forum becomes unavailable").

due to the unavailability of the AAA, the requirement that the AAA serve as the arbitral forum should nonetheless be severed from the remainder of the Agreement based on this severability clause. Additionally, Defendants note that the severability clause indicates the parties' intent for the Agreement—and specifically the arbitration provision—to remain in effect, even if a portion of the Agreement is invalidated. Again, Plaintiff's Response makes no attempt to address Defendants' arguments regarding the severability clause.

"[I]f a provision is 'not enforceable, then the court must determine whether the unenforceable provisions are severable.'" *Hudson v. P.I.P. Inc.*, 793 F. App'x 935, 938 (11th Cir. 2019) (quoting *Terminix Int'l v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331 (11th Cir. 2005)). State law controls the determination of whether to sever an offending contractual clause. *See Terminix Int'l*, 432 F.3d at 1331 (stating that state contract law should apply to dispute whether clause should be severed in arbitration agreement). Under Florida law, "a bilateral contract is severable where the illegal portion of the contract does not go to its essence, and where, with the illegal portion eliminated, there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other." *Hudson v. P.I.P., Inc.*, No. 18-61877-CIV, 2020 WL 5647009, at *3 (S.D. Fla. Mar. 13, 2020) (quoting *Local No. 234 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada v. Henley & Beckwith, Inc.*, 66 So. 2d 818, 821-22 (Fla. 1953)), *report and recommendation adopted*, No. 18-61877-CIV, 2020 WL 5647051 (S.D. Fla. Apr. 2, 2020).

> The parties' intent, [as determined] by the terms and provisions in the contract, reveal whether the contract is divisible. *See id.* at 821. Where the contractual clauses appear to be interdependent and common to one another, *see Fla. Mortg. Fin. v. Flagler Plaza Corp.*, 308 So. 2d 571, 572 (Fla. [3d DCA] 1975) (per curiam), or where one party trades a set of promises for the other party's set of promises, *see Henley & Beckwith*, 66 So. 2d at 822, the contract is indivisible, making severance inappropriate.

9

*Odom v. Celebrity Cruises, Inc.*, No. 10-23086-CIV, 2011 WL 10636151, at *4 (S.D. Fla. Feb. 23, 2011).

"Generally, the presence of a severability provision in the parties' agreement 'evinces the parties['] intention to enforce the remainder of the agreement in the event any portion of it is deemed invalid.'" *Distribuidora de Vehiculos S.A. v. John Deere Constr. & Forestry Co.*, No. 12-cv-20983, 2012 WL 13014702, at *6 (S.D. Fla. June 13, 2012) (quoting *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1031 (11th Cir. 2003)); *see also Gaby's Bags, LLC v. Mercari, Inc.*, No. 2:19-cv-785-FtM-38MRM, 2020 WL 495215, at *3 (M.D. Fla. Jan. 30, 2020). Further, "the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Linea Navira De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.*, 169 F. Supp. 2d 1341, 1346 (M.D. Fla. 2001).

The Eleventh Circuit has explained that "[t]wo provisions will be severed only 'if the performance as to which the agreement is unenforceable is not an *essential part* of the agreed exchange.'" *Inetianbor*, 768 F.3d at 1352 (quoting Restatement (Second) of Contracts § 184(1)); *see also In re Checking Account Overdraft Litig. MDL No. 2036*, 685 F.3d 1269, 1283 (11th Cir. 2012) ("Where a term rather than the entire contract is unconscionable, the appropriate remedy is ordinarily to deny effect to the unconscionable term." (quoting Restatement (Second) of Contracts § 208 cmt. g (1981))) ("*In re Checking Account Overdraft*"). Thus, an unenforceable provision is severable where that provision does not "pervade the arbitration agreement." *See In re Checking Account Overdraft*, 685 F.3d at 1283; *cf. Inetianbor*, 768 F.3d at 1352-53 (holding that the forum selection clause was not severable because the contract indicated the parties' express, repeated, and pervasive intent to arbitrate subject to the limitation that the Tribe would serve as the exclusive arbitral forum). "If the offensive terms are severable, then the court must compel arbitration

according to the remaining, valid terms of the parties' agreement." *Terminix Int'l Co.*, 432 F.3d at 1331.

As discussed above, the choice of arbitral forum in this case is not integral to the parties' Agreement because it does not pervade the Agreement, but rather suggests an ancillary logistical concern. *See Hudson*, 2020 WL 5647009, at *4 ("A plain reading of the language of the arbitration clause indicates that its main purpose is to define the forum for resolving disputes pertaining to . . . the Agreements."). Indeed, the allegedly unenforceable provision, if eliminated, would not eliminate the existence of the otherwise valid Agreement—namely, an agreement to provide compensation for and to resolve any disputes surrounding Plaintiff's employment separation. "[T]he illegal portion of the arbitration clause in the instant litigation does not represent the only, or even the primary, reason for the parties to have agreed to arbitrate disputes." *Id.*; *cf. Henley & Beckwith, Inc.*, 66 So. 2d at 821-22 (where the contract's illegal provision represented the only reason for even entering into a contract and was therefore not severable). Likewise, unlike the severability clause in *Inetianbor*, which the Eleventh Circuit determined was unenforceable due to the pervasiveness of the contract's references to the Tribe, as stated above, the choice of arbitral forum here does not pervade the Agreement. *See Inetianbor*, 768 F.3d at 1350-52; *see also Heath v. Carson Smithfield LLC*, No. 3:17-cv-129-TCB, 2018 WL 4846532, at *3 n.1 (N.D. Ga. Jan. 3, 2018) (distinguishing the pervasive arbitral forum selection in *Inetianbor* from the agreement at issue based on the absence of any evidence to indicate that the designated forum was integral to the arbitration agreement). Accordingly, the Court concludes that the allegedly unenforceable provision in this case "is merely incidental to the agreement to resolve certain disputes through arbitration." *Hudson*, 2020 WL 5647009, at *4; *see also Obremski v. Springleaf Fin. Servs., Inc.*, No. 8:12-cv-1594-T-33AEP, 2012 WL 3264521, at *3 (M.D. Fla. Aug. 10, 2012) (appointing a substitute arbitration forum where the court found "nothing in the arbitration provision of the

Agreement to suggest that the choice of NAF as the arbitration forum was an integral part of the agreement to arbitrate"); *GGNSC Montgomery, LLC v. Norris*, No. 2:12cv711-CSC, 2013 WL 627114, at *3 (M.D. Ala. Feb. 20, 2013) ("In this case, the court concludes that the NAF is an 'ancillary logistical concern' rather than an 'integral part of the agreements,'" because of the clear intent to resolve all claims through arbitration and the lack of "evidence before the court that the NAF was an integral part of either Arbitration Agreement").

Finally, it is worth noting that the circumstances surrounding the instant Motion did not arise, as Plaintiff argues, due to Defendants' bad faith refusal to pay the AAA's fees, despite a valid contractual agreement promising to do so. Instead, Defendants seek the appointment of a substitute arbitration forum because, as they contend, the AAA refused to enforce the express terms of the indemnification clause in the parties' Agreement, and instead attempted to require that Defendants pay the fees at issue. *See Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 831-32 (11th Cir. 1991) ("[B]ecause arbitration is a creature of contract, the parties, when incorporating any set of arbitration rules by reference in an arbitration agreement, are free to include provisions in conflict with certain provisions of rules incorporated by reference; the specific provisions in the arbitration agreement take precedence and the arbitration rules are incorporated only to the extent that they do not conflict with the express provisions of the arbitration agreement."); *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 673 (5th Cir. 2002) ("The AAA must follow the selection procedures outlined in the arbitration agreement."), *opinion modified on reh'g* (July 9, 2002). The facts of this case differ significantly from cases in this Circuit that refused to appoint a substitute arbitral forum where the defendant initially moved to compel arbitration and then subsequently refused to pay the required arbitration fees in bad faith, thus rendering the agreed-upon forum unavailable.[6]

---

[6] *See Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1306 (11th Cir. 2018) ("A calculated choice to abandon arbitration after getting adverse rulings from the arbitrator certainly looks like forum shopping.

12

Although the Court makes no determination on the propriety of Defendants' refusal to pay the AAA fees, it is nonetheless important to recognize the distinction between the competing narratives presented by the parties here. However, the Court cautions that it will not entertain any additional attempts to compel further arbitration proceedings, should the substitute arbitration fail. As the Court of Appeals for the Ninth Circuit has emphasized, any further failure to adequately arbitrate pursuant to the Agreement "would [] allow a party refusing to cooperate with arbitration to indefinitely postpone litigation." *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003). Indeed,

> the sole remedy available to a party prejudiced by default would be a court order compelling a return to arbitration. The same offending party could then default a second time, and the prejudiced party's sole remedy, again, would be another order compelling arbitration. This cycle could continue, resulting in frustration of the aggrieved party's attempts to resolve its claims. One purpose of the FAA's liberal approach to arbitration is the efficient and expeditious resolution of claims . . . . This purpose is not served by requiring a district court to enter an order returning parties to arbitration upon the motion of a party that is already in default of arbitration. Another, and preeminent, purpose of the FAA is to ensure "judicial enforcement of privately made agreements to arbitrate." . . . But this purpose also is not served by returning parties to arbitration upon the motion of a party that is in default of arbitration.

*Id.*

---

And this type of behavior would surely be a factor the District Court could consider in deciding whether to sanction [the defendant] by entering a default judgment."); *Mason v. Coastal Credit, LLC*, No. 3:18-cv-835-J-39MCR, 2018 WL 6620684, at *6 (M.D. Fla. Nov. 16, 2018) (holding that the defendant waived the right to arbitration by failing to pay the required AAA fees, and noting that "Plaintiff paid the AAA fees, but Defendant did not. As a result of Defendant's default, the AAA terminated the arbitration. Accordingly, Defendant proceeded inconsistently with his right to arbitration"); *Garcia v. Mason Contract Prod., LLC*, No. 08-23103-CIV, 2010 WL 3259922, at *3-4 (S.D. Fla. Aug. 18, 2010) ("The parties' agreed-upon contractual dispute resolution mechanism, hence, is no longer possible," due to the defendant's failure to pay the required fees, and this "failure to comply with the contractual rules agreed to by the parties clearly constitutes a 'default' as that term is used in § 3 of the FAA."); *see also Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 333-34 (5th Cir. 1987) ("[A] party may not rely on the doctrine of impossibility or impracticability '[i]f the event is due to the fault of the . . . [party] himself [or herself].' Simply put, 'a party may not affirmatively cause the event that prevents . . . [the] performance.'" (citations omitted)).

13

Thus, upon being presented with a fair chance to proceed to arbitration pursuant to the parties' Agreement, any actions by either party that serve to impede the arbitration proceedings will foreclose the ability for either party to request that this Court order their return once more to arbitration. *Garcia*, 2010 WL 3259922, at *2 ("Usually, a party that succeeds in terminating litigation based upon an arbitration agreement is careful to preserve its right to arbitrate by timely paying the fees required by the arbitration process, by not litigating elsewhere, and by faithfully abiding by the supposedly 'speedy' and 'summary' procedures afforded to the parties at arbitration." (footnote omitted) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 29 (1983))).

Because the choice of arbitral forum is not integral to the parties' Agreement and, even if it were unenforceable, the invalid portion of the provision is severable from the rest of the Agreement, the Court concludes that the appointment of a substitute arbitrator pursuant to § 5 of the FAA is appropriate. As such, Defendants' Motion is granted, and this Court will appoint an arbitrator as set forth below. Plaintiff's pending Motion to Reopen Case, ECF No. [29], and Defendants' pending Motion for Sanctions, ECF No. [43], are both denied as moot at this juncture.[7]

---

[7] Plaintiff seems to suggest that this Court is bound to address its pending Motion to Reopen Case, ECF No. [29], before it addresses the instant Motion, simply because Plaintiff's motion was filed first. *See* ECF No. [40] at 12 ("Plaintiff has filed a Motion to Re-Open and Lift the stay in light of the case being administratively closed by the AAA. That aforementioned Motion at ECF No. [29] is still pending before this court. It would first need to be decided whether Plaintiff's Motion is granted before consideration of the Defendants' Motion at ECF No. [38]."). Plaintiff is mistaken. This Court is free to address motions in the order it sees fit and is free to manage its caseload in the manner it sees fit. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997) ("[D]istrict courts enjoy broad discretion in deciding how best to manage the cases before them."). In this case, resolution of Defendants' Motion first is the appropriate course of action.


Case No. 20-cv-20533-BLOOM/Louis

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion, **ECF No. [38]**, is **GRANTED**.

2. The Court **APPOINTS** Elaine Feldman to arbitrate the issues raised in the above-styled case. The arbitration shall proceed in the manner provided for in the parties' Agreement.

3. This case shall remain **STAYED** pending the completion of the arbitration proceedings.

4. Plaintiff's Motion to Reopen Case, **ECF No. [29]**, is **DENIED AS MOOT**.

5. Defendants' Motion for Sanctions, **ECF No. [43]**, is **DENIED AS MOOT.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 27, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record